**SIGNED THIS: October 22, 2008**

_____
**MARY P. GORMAN**
**UNITED STATES BANKRUPTCY JUDGE**
_____

```
                 UNITED STATES BANKRUPTCY COURT

                  CENTRAL DISTRICT OF ILLINOIS

In Re                          )
                               )   In Bankruptcy
JON D. KENT and                )
PAMELA L. KENT,                )   Case No. 07-71841
                               )
         Debtors.              )
_____)
                               )
DARREN STANDEFER and           )
LISA STANDEFER,                )
                               )
         Plaintiffs,           )
                               )
    v.                         )   Adversary No. 07-7132
                               )
JON D. KENT and                )
PAMELA L. KENT,                )
                               )
         Defendants.           )
```

## O P I N I O N

This case comes before the Court for decision after trial on

the two-count Complaint filed by Darren and Lisa Standefer ("Plaintiffs") objecting to the issuance of a discharge to Jon D. Kent and Pamela L. Kent (collectively "Debtors"), and objecting to the dischargeability of the debt owed to Plaintiffs by Debtors. For the reasons set forth below, the objection to discharge will be granted, and Debtors will be denied a discharge as requested in Count I of Plaintiffs' Complaint. Because no discharge order will be entered, the issue raised by Count II of the Complaint - the dischargeability of Debtors' debt to Plaintiffs - is moot, and, accordingly, Count II will be dismissed without prejudice.

Prior to 2001, Plaintiffs operated a successful lawn care business with numerous customers throughout the Springfield, Illinois area. On July 1, 2001, Plaintiffs' corporation sold all of its assets to Kent Enterprises, Inc. ("Kent Enterprises"), a corporation owned by Debtors, for a sale price of $625,000. In order to complete the purchase, Kent Enterprises borrowed approximately $525,000 from Marine Bank, and Plaintiffs, individually, financed the $100,000 balance pursuant to the terms of a promissory note which was guaranteed by Debtors, individually. Marine Bank perfected a blanket lien on all of the assets transferred as part of the sale. Plaintiffs, jointly with their corporation, took back a junior lien on all of the same assets to secure payment of the amounts owed to them.

Included in the sale and valued at $355,000 was the goodwill

of Plaintiffs' business, which consisted of customer contracts and relationships and the right to use the Standefer name. Accordingly, Kent Enterprises began doing business as Standefer Lawn Care ("SLC"). The business remained at the same location from which Plaintiffs had operated until the summer of 2002 when the business moved to property on Forrest Lane in Sherman, Illinois ("the Sherman property"). The Sherman property was owned by Pamela Kent's parents, Edward and Peggy King. On July 26, 2002, the Kings signed a quitclaim deed transferring title to the Sherman property to themselves and Pamela Kent as joint tenants. The Sherman property consists of a home where Debtors reside with their children and outbuildings used by Debtors in the operation of their lawn care business.

SLC apparently prospered until the summer of 2003 when Debtors discovered that their bookkeeper had embezzled almost $100,000 from their business. Debtors also learned that the bookkeeper had not been paying the Debtors' corporate and personal tax obligations to the Internal Revenue Service ("IRS") as they had expected her to do, and sizeable liabilities to the IRS had accrued. Debtors entered into an installment agreement with the IRS to pay their past due tax liabilities.

In the spring of 2007, Debtors apparently had a contact with an IRS representative during which they learned that, despite several years of payments on their installment agreement, they were

essentially just paying interest and not making a dent in the principal amount owed.  They then were advised by someone - it was unclear from the testimony who - to file an offer in compromise to settle their IRS debt, and were further advised to cease making their installment payments while the offer in compromise was being put together and submitted.  Debtors followed this advice which resulted in the IRS serving a Notice of Intent to Levy on them in June, 2007.  After a subsequent, contentious meeting with IRS officials to discuss the Notice of Intent to Levy, Debtors became extremely concerned that they would lose everything to the IRS and be put out of business.

   At the same time that Debtors were dealing with the IRS in 2007, they were also recovering from a fire loss at the Sherman property.  The fire occurred in January, 2007 and caused damage to both the outbuildings at the Sherman property and the equipment used in the SLC business.  The damaged property was covered by insurance through a policy paid for by SLC.  Approximately $301,000 in insurance proceeds was received by SLC to replace the damaged building and equipment and to pay for other losses associated with the fire.

    In the spring of 2007, Debtors also started conducting some of their lawn care business operations under the name KLC Turf Pro. Jon Kent testified that, because of adverse publicity about the embezzlement at their business, Debtors had been thinking for some

time about changing their operating name.  To that end, they took out an advertisement in the telephone directory published in the spring of 2007 under the KLC Turf Pro name.  That resulted in some new customers and, when those customers wrote checks for payment for services to the new entity, a new bank account was opened.  The new account was established at Illini Bank under the name "Jon D. Kent DBA KLC Turf Pro."  SLC had previously established its account at Williamsville State Bank & Trust.

After the troubling meeting with the IRS, Debtors began a series of activities which form the basis for the Complaint against them.  Those activities included the following:

1.  On July 5, 2007, Pamela Kent took Jon Kent's mother, Edwina Kent, to the office of the Sangamon County Clerk and obtained a certificate of business ownership for KLC Turf Pro in Edwina Kent's name.  Pamela Kent personally paid the Clerk's fee and also, on that same day, personally paid the fee at the Springfield State Journal-Register newspaper for the required publication of the legal notice of the business registration.

2.  On July 9, 2007, Debtors took Edwina Kent to Illini Bank and executed new signature cards for the KLC Turf Pro account previously established there and, thereby, caused the ownership of the account to be transferred from Jon Kent to Edwina Kent. Debtors remained authorized signatories on the account.  The balance in the account on the date of transfer was approximately

$11,600.

3. On July 9, 2007, Pamela Kent prepared and recorded a quitclaim deed transferring her interest in the Sherman property to her father, Edward King. The deed reflects that Edward King paid no consideration for the transfer.

4. Throughout July, 2007 and thereafter, Jon Kent met with SLC customers and requested that they agree to become customers of KLC Turf Pro. A new contract with Calvary Cemetery Association, one of the largest customers of SLC, was signed by Edwina Kent on behalf of KLC Turf Pro with an effective date of July 1, 2007.

5. Debtors and SLC stopped making payments to Marine Bank which resulted in many of the assets of SLC being repossessed by Marine Bank in late July, 2007.

6. Debtors failed to make the July, 2007 loan payment to Plaintiffs.

7. Debtors began a whirlwind series of cash transactions by withdrawing large amounts of cash from the SLC account at Williamsville State Bank & Trust. The funds in the SLC account were generated from SLC customer payments and the insurance proceeds received as a result of the fire loss. Much of the cash withdrawn from the SLC account was then deposited into Debtors' personal account at Illinois National Bank or the KLC Turf Pro account at Illini Bank. Some of the cash withdrawn was not, however, deposited in either account and much of the cash that was

deposited into Debtors' personal account was subsequently withdrawn from that account, again in cash.  No records exist detailing how that cash was then used.

Debtors filed their voluntary petition under Chapter 7 on September 6, 2007.  Plaintiffs timely filed their adversary Complaint on December 13, 2007.  Trial was held August 19, 2008.

Count I of Plaintiffs' Complaint objects to the discharge of Debtors and requests that they be denied a discharge.  *See* 11 U.S.C. §727.  Discharges are granted only to honest debtors. Grogan v. Garner, 498 U.S. 279, 286-87, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).  Issues raised by objections to discharge should be liberally construed in favor of debtors in order to preserve the "fresh start" goal of bankruptcy relief.  In re McWilliams, 284 F.3d 785, 790 (7th Cir. 2002); In re Juzwiak, 89 F.3d 424, 427 (7th Cir. 1996).  The party objecting to discharge has the burden of proof and must prove all required elements of their objection by a preponderance of the evidence.  Fed.R.Bankr.P. 4005; In re Scott, 172 F.3d 959, 966-67 (7th Cir. 1999).

Plaintiffs' specific objection to Debtors' discharge is brought pursuant to §727(a)(2)(A), which provides as follows:

> (a)  The court shall grant the debtor a discharge, unless -
>
> * * * *
>
> (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property

-7-

> under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed -
>
> (A) property of the debtor, within one year before the date of the filing of the petition[.]

11 U.S.C. §727(a)(2)(A).

In order to prevail on their objection to discharge, Plaintiffs must prove that (i) Debtors, (ii) transferred, (iii) their property, (iv) with the intent to hinder, delay, or defraud a creditor, (v) within one year of their bankruptcy filing. In re Kontrick, 295 F.3d 724, 736 (7th Cir. 2002), *aff'd sub nom* Kontrick v. Ryan, 540 U.S. 443, 124 S.Ct. 906, 157 L.Ed.2d 867 (2004). Plaintiffs have met their burden of proof on each element.

Pamela Kent testified that she prepared and recorded a quitclaim deed on July 9, 2007 whereby she transferred her ownership interest in the Sherman property to her father. Jon Kent testified that he signed the signature card at Illini Bank transferring his interest in the KLC Turf Pro account owned by him to his mother, Edwina Kent, on July 5, 2007. Debtors' attorney acknowledged in his closing argument that Debtors had made transfers of their property within one year of their bankruptcy filing, and stated that the only issue of disputed fact was whether the transfers were made with the intent to hinder, delay, or defraud a creditor. Thus, all elements of the required proof have been admitted by Debtors and conceded by their attorney, except for

-8-

proof of Debtors' actual intent to hinder, delay, or defraud a creditor.

The actual intent to hinder, delay, or defraud a creditor may be established by circumstantial evidence and by inferences drawn from a debtor's course of conduct. McWilliams, 284 F.3d *at* 790. The Seventh Circuit has enumerated a number of factors related to transfers of property which, if established by the evidence, indicate the existence of actual fraud. The factors include: (1) lack or inadequacy of consideration for the transfer; (2) a family, friendship, or close associate relationship between the parties; (3) the retention by the transferor of possession, benefit, or use of the property transferred; (4) the financial condition of the debtor/transferor; (5) the existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threats of suits by creditors; and (6) the chronology of the events and transactions under inquiry. Id. *at* 791. Bankruptcy courts considering these factors have found that the "retention of the use of property transferred very strongly indicates a fraudulent motive underlying the transfer." *See, e.g.*, In re Costello, 299 B.R. 882, 895-96, (Bankr. N.D. Ill. 2003).

Applying these factors to the evidence presented at trial leads inescapably to the conclusion that Debtors had actual intent to hinder, delay, and defraud a creditor when they transferred

-9-

their assets. Pamela Kent transferred her interest in the Sherman property to her father for no consideration. She and her family continued to reside there, however, and the outbuildings continued to be used by Debtors for their business activities. The transfer of the property by quitclaim deed apparently resulted in not even a momentary disruption of Debtors' use of the property. Likewise, Jon Kent transferred his ownership of KLC Turf Pro and its bank account to Edwina Kent for no consideration. Debtors continued, however, to run the business and all subsequent transactions on the KLC Turf Pro bank account were made by one of the Debtors rather than by Edwina Kent. The transfer of the business to a new owner caused no change in the day-to-day operation or management of the business.

Both transfers were made within days of Debtors' meeting with the IRS at which they state they were threatened with levies on all of their property. The transfers were part of an overall series of activities which resulted not only in the transfer of Debtors' personally-owned assets, but also in the gutting of Kent Enterprises and SLC. The evidence clearly established that through the efforts of Jon Kent, KLC Turf Pro took over the customer relationships and business contracts of SLC without paying any consideration for those assets, even though Debtors and Kent Enterprises had paid over $300,000 for those same assets.

This circumstantial evidence and the inferences which must be

drawn from all evidence presented establish by a preponderance of the evidence that the transfers were intended to hinder, delay, and defraud a creditor. Additionally, Debtors' own testimony contained admissions of their intent which also establish their actual wrongful intent.  When asked why she transferred her interest in the Sherman property to her father, Pamela Kent responded that she did not want the property to become involved in the IRS problems. Both Jon and Pamela Kent admitted that they talked with Edwina Kent shortly after the contentious IRS meeting and she suggested putting the business in her name as a way to respond to the IRS threats. This testimony supports the finding that the transfers were made as a direct response to the IRS collection activities and with the specific intent to thwart those collection activities.

   Debtors' attorney argued that the transfers were not made to hinder, delay, or defraud Plaintiffs specifically.  That may be true, but the evidence clearly established that Debtors' motivating factor in making the transfers was to hinder, delay, and defraud the IRS.  Plaintiffs need not prove that Debtors had an express intent to harm Plaintiffs.  To the contrary, Plaintiffs do not even need to prove any actual damage or harm.  *See* <u>In re Smiley</u>, 864 F.2d 562, 569 (7th Cir. 1989).  They need only prove that Debtors acted with actual intent to hinder, delay, or defraud some creditor, and Plaintiffs have met their burden on that issue.

   Because Plaintiffs have met their burden of proof on all

required elements of their objection to discharge set forth in Count I of their Complaint, Debtors will be denied a discharge.

Count II of Plaintiffs' Complaint is brought pursuant to several provisions of §523 and seeks the exception of their claim against Debtors from any discharge which might be granted to Debtors.  *See* 11 U.S.C. §523(a)(2), (4), & (6).  Because Debtors are denied a discharge, however, there is no need to consider exceptions to a discharge.  Thus, the relief requested in Count II is moot and Count II will be dismissed.  The dismissal will, however, be without prejudice and with leave to reinstate in the event that this Court's denial of Debtors' discharge is reconsidered, or reversed or modified on appeal.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

###